RICHARD GRANT HALL, Infant, by WILLIAM C. WHITE, His Guardian ad Litem, and FRANK EVERETT HALL and Another, Executors, etc., of FRANK L. HALL, Deceased, Plaintiffs, *v.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and Others, Defendants.

Supreme Court, Erie County, May 23, 1928.

–Insurance — life insurance — change of beneficiaries — policies provided that change of beneficiaries would become effective upon receipt of written notice to insurance company at its home office and indorsement by company to that effect on or attached to policies — policies were forwarded to insurance company with request, but insured died before indorsement was made upon them — execution and delivery of written request for change of beneficiaries, together with surrender of policies, operated in law to change beneficiaries — beneficiaries cannot be defeated by any omission or neglect of insurer to act — policy which insured requested be made payable to grandchild to be born must be paid to insured's estate — those interested in estate may carry out insured's wishes as to grandchild.

Certain policies of life insurance expressly reserved in the insured, at any time while the policies were in force by written notice to the company at its home office, the right to change the beneficiaries, such change to be subject to the rights of any previous assignees and to become effective only when provisions to that effect were indorsed on or attached to the policies by the company.    It appears that the insured duly executed, on a form provided by the insurance company, a request to have the terms of three policies of $15,000 each transformed to five

policies of $9,000 each, four of which to be payable to designated grandchildren, and the fifth policy to be made payable in a lump sum in favor of the estate of the insured so that it would be ready for indorsement upon the birth of an expected grandchild. The policies, together with the request, were received at the home office of the defendant insurance company, but down to the death of the insured the company had not made any indorsements on the policies or issued any policies in accordance with the directions contained in the request. All premiums required to be paid have been met.

The execution and delivery of the written request for the change of beneficiaries, together with the surrender of the three $15,000 policies to be changed to the five policies of $9,000 each, operated in law to change the beneficiaries, and the change became effective when the written demand was made and the policies delivered to defendant prior to insured's death.

The provision of the policies to the effect that they would become effective only when the change of beneficiaries was indorsed or attached to the policies by the company was intended for the benefit and protection of the company alone, and since the insured did all on his part that was required to be done to effect a change of beneficiary, the beneficiaries cannot be defeated by the omission or neglect of the insurer to act.

In view of the fact that it was the evident purpose of the insured to make the fifth policy in favor of his estate so that it would be ready for indorsement upon the birth of an expected grandchild, the most that can be claimed is that the insured wished the policy made payable to his estate so that he might, after the birth of the child, make her a beneficiary under it; therefore, that $9,000 policy must be paid to the insured's estate, which may or may not carry out the wishes of the insured as it sees fit.

ACTION on policies of life insurance, involving validity of change of beneficiaries.

*Ray M. Stanley,* for the plaintiffs.

*Roland Crangle,* for the Prudential Insurance Company.

*Max M. Yellen,* guardian *ad litem,* for the defendants Geraldine Eleanor Hall, Eugenia May Hall and Frank E. Hall, Jr.

*William C. White,* guardian *ad litem,* for the defendant Shirley Gladys Hall.

CHARLES B. WHEELER, Official Referee. The facts are entirely without dispute and are as follows:

On November 21, 1923, Frank L. Hall, then being fifty-nine years of age, made an application in writing to the Prudential Insurance Company of America for two policies covering his life for $15,000 each, and again on the 26th day of November, 1923, he made an application in writing for an additional policy on his life in the sum of $15,000. On the 1st day of December, 1923, the Prudential Insurance Company of America duly issued to him two policies in the sum of $15,000 each and on the 8th day of December, 1923, the Prudential Insurance Company of America issued a third policy also for the sum of $15,000. Each of these

policies were made payable to the executors, administrators or assigns of the insured. By the express terms of each of these policies, the right to change the beneficiary was expressly reserved by the insured.

The particular paragraph contained in the policy relating to the change of beneficiary and the procedure to be followed in effecting such change is as follows:

" Change of Beneficiary. If the right to change the beneficiary has been reserved and if the insured shall have attained to majority according to the laws of the state in which the insured resides, the insured may at any time while this policy is in force, by written notice to the company at its home office, change the beneficiary or beneficiaries under this policy, such change to be subject to the rights of any previous assignee and to become effective only when a provision to that effect is indorsed on or attached to the policy by the company, whereupon all rights of the former beneficiary or beneficiaries shall cease."

On the 22d day of January, 1925, the insured duly made application to have the beneficiary changed in each of these policies. The change was accordingly made by the insurance company by proper indorsement thereon so that Geraldine Eleanor Hall became the beneficiary in one of these policies; Eugenia May Hall in one, and Frank Everett Hall, Jr., in the third.

On or about the 21st day of April, 1927, Frank L. Hall, the insured, duly executed on a form provided by the Prudential Insurance Company, a request to have the terms of said three policies of insurance of $15,000 each transformed to five policies of insurance of $9,000 each, and further requested that four of these policies of $9,000 be made payable respectively to Geraldine Eleanor Hall, Eugenia May Hall, Frank Everett Hall, Jr., and Richard Grant Hall, the children named being grandchildren of the insured, and further requested that the fifth policy of $9,000 be made payable " in a lump sum in favor of the estate of the insured so that it will be ready for indorsement upon the birth of the expected new grandchild." A photostatic copy of this request is attached to the complaint. Immediately following its execution, this request, together with the three policies in question, were forwarded to the Prudential Insurance Company of America at its home office in Newark, N. J. These policies together with the request were received in due course by the Prudential Insurance Company, and from said date were retained and are now still in the possession of the insurer.

On the 17th day of May, 1927, the insured died at the city of Buffalo, following an operation. Down to the date of the death

of the insured, the Prudential Insurance Company had not made any indorsements upon any of said policies or issued any policies in accordance with the directions contained in the above-mentioned request.

The death of the insured was not caused by any of the causes excepted in said policies. Under and by the terms of a last will and testament left by the insured, Frank Everett Hall, a son, and the Marine Trust Company of Buffalo were duly appointed executors of his estate, by a decree issued out of the Surrogate's Court of Erie county on the 26th day of May, 1927. The executors named duly qualified and have ever since and now are acting as such.

All premiums required to be paid by the insured have been paid and the insurer recognizes its liability to pay the aggregate amount provided to be paid by the policies in question, but raises a question as to whether or not the request for a change of beneficiaries duly executed and filed with the insurer was effectual under the precise circumstances to work a change of beneficiaries under the policies as they had previously existed. The question, therefore, to be determined is whether or not the insured, by the execution and delivery of the written request in question together with the original policies at the home office of the insurer, effected an actual change of beneficiaries under the policies, or to state the proposition in another form — does the failure or neglect of the insurer to make the proper indorsements or to issue the new policies defeat the contract right of the insured to any new beneficiaries?

The defendant Shirley Gladys Hall was born about two months after the death of Frank L. Hall, her grandfather, and there is also the question presented whether this grandchild takes any interest in the $9,000 policy directed to be issued " in a lump sum in favor of the Estate of the insured so that it will be ready for indorsement upon the birth of the expected grandchild."

The execution and delivery of the written request for the change of beneficiaries together with the surrender of the policies of $15,000 each to be changed to five policies of $9,000 each in the opinion of the referee operated in law to change the beneficiaries. The decisions of the courts of this and other States apparently settle this proposition.

The provision that the policies shall " become effective only when a provision to that effect is indorsed on or attached to the policy by the company," was intended for the benefit and protection of the company alone. (*Navassa Guano Co.* v. *Cockfield*, 244 Fed. 222.)

The courts, therefore, hold that where the right to change beneficiaries is reserved to the insured the insurer cannot in the

slightest degree question the revocation of the former beneficiary or question the selection of the substituted beneficiaries, and the noting of the change on the policies is but a ministerial act.

Consequently it is held that where the insured has done on his part all that is required to be done to effect a change of beneficiary the change becomes operative and cannot be defeated by the omission or neglect of the insurer to act on its part.

One of the earlier cases in this State is that of *Luhrs* v. *Luhrs* (123 N. Y. 367). In that case a member of a charitable organization held a benefit certificate payable on death, which gave him the right to change the beneficiary by surrendering his benefit certificate to the supreme lodge, which was required to cancel the original, and issue a new certificate in its place. The member surrendered his original certificate and mailed it to the lodge with directions to issue a new one in which his sister instead of his wife was to be the beneficiary. The member died before the original certificate reached the grand lodge. Nevertheless the Court of Appeals held the old certificate was to be regarded as canceled when it was properly surrendered to the branch lodge, and that the death of the member did not operate to prevent the consummation of the surrender. To the same effect is the case of *Donnelly* v. *Burnham* (86 App. Div. 226).

In *Lahey* v. *Lahey* (174 N. Y. 146) an original beneficiary certificate designated the wife as the beneficiary. Trouble arose and the husband and wife separated, but the wife took away with her the benefit certificate. The husband then executed a writing stating he desired to change his certificate so his wife should have $1,000, his mother $500 and his branch lodge $500. He sent this writing to the association, but did not surrender the original certificate because his wife, who held it, refused to give it up. For this reason the association refused to issue a new certificate making the changes asked. The member died, and in an action to determine the right to the benefit fund it was held the change asked was operative although the original certificate was not surrendered.

The case of *State Mutual Life Assurance Co.* v. *Bessett* (41 R. I. 54; L. R. A. 1918C, 961) is a very enlightening one, in which the decisions of various States are cited and discussed. In the *Bessett* case an insured who was given the right in the policy to change the beneficiary filled in a blank form furnished by the company and delivered it to the general agent of the insurer to be forwarded to the home office. This nomination of change of beneficiary did not reach the home office until after the death of the insured. The policy provided that " Every change or designation must be made by written notice to the company at its home office, accompanied by the

policy, and will take effect only when indorsed on this policy by the company."

A contest arose as to who was entitled to the amount of the policy, and the court held the proposed change of beneficiary became effective although at the time of the insured's death the policy had not reached the home office and the indorsement had not been made on the policy itself. After citing other cases the court in its opinion said: " This court, therefore, has unmistakably adopted the view that an insured may change a beneficiary under an insurance policy (having reserved the right to do so) by doing all that is required of him to effect the change, or all that is possible for him to do, although certain formal or ministerial acts of the officers of the insurer are not performed before the death of the insured."

In the case of *Navassa Guano Co.* v. *Cockfield* (244 Fed. 222) the facts were substantially the same as in the case under consideration. The request for the change of the beneficiary had been duly executed and forwarded together with the policy to the insurer, but the insurer had not indorsed the change on the policy at the time of the death of the insured. The court said: " The provision in the policy requiring or stipulating that the change of beneficiary should only take effect upon the indorsement of the change upon the policy by the company was intended for the benefit and protection of the company. The stipulation in the policy is that the insured may at any time while the policy is in force by written notice to the company at its home office change the beneficiary or beneficiaries under the policy. The policy mentions or requires no form or specific form for this notice; it simply requires written notice. This stipulation had been duly complied with by S. R. Cockfield, who had given written notice to the company of the change of beneficiary, and the company had received it. It was the duty of the company upon its receipt at once to indorse the change of beneficiary on the policy. Their delay in so doing was due to their desire to have the notice of change of beneficiary made a little more formal upon the blanks customarily used by it. This may have been a convenience to the company, but was no part of the contract, and as a court of equity in such cases as this would hold that to have been done which ought to have been done, it will now hold that the change of beneficiary was, so far as this stipulation in the policy was concerned, sufficiently made as against all third parties, as against whom, if the question depended upon this alone, the defendant Reamer L. Cockfield would be entitled to hold the policy and its proceeds."

In the case of *Reid* v. *Durboraw* (272 Fed. 99), in discussing

this question, the court says: " It is true that one named as beneficiary has no vested interest and is not entitled to notice of change; that the right to change a beneficiary is a property right of the assured, which in the case of insolvency the court can require him to exercise in favor of his creditors   *   *   *;   that the insurer has no discretion to refuse to indorse the change of beneficiary in the policy when the insured has sent the policy to the home office with a request for the change; that equity, considering that as done which ought to be done, will treat the change as actually made when the insured has done all that he could to meet the conditions for change required by the policy; that the insurer may waive performance of the conditions required for the indorsement of the change on the policy."

The right to change beneficiaries reserved to the insured was not conditioned on the assent or approval of the insurance company, but was absolute in its terms. We, therefore, conclude that this change became effective in this case when the written demand was made and the policies delivered to the insurance company prior to the death of the insured.

The fact that Mr. Hall, the insured, requested that five policies of $9,000 each be issued in place and stead of three policies of $15,000 each we are of the opinion does not in any way change the conclusion we have reached. Such a change in no way enlarged or altered the liability or obligation of the insurance company. On the receipt of the request for the change and the surrender of the original policies the company made no objection to complying with the insured's request. By its answer said insurance company does not question the right of the insured to have said policies changed as requested, and alleges its readiness to pay the amount of said policies to such persons or parties as this court may adjudge entitled to receive the same. The remaining question to be disposed of is whether the defendant Shirley Gladys Hall, the grandchild born after the insured's death, has any interest in the fifth policy of $9,000. The request to the insurance company asks for a policy of $9,000 payable " *in a lump sum in favor of the Estate of the insured so it will be ready for indorsement upon the birth of the expected new grandchild.*"

It is very evident it was the purpose of the insured to make this policy payable to the grandchild to be born, and thus provide for her in the same manner he had provided for the other four grandchildren. The referee is disposed if possible to spell out some trust in favor of this grandchild, but is unable so to do.

The most that can be claimed is that the insured wished the policy made payable to his estate so that he might after the birth

of the child make her a beneficiary under it.    Had the policy been actually issued as requested it would still have been in the power of the insured to have carried out his intention or not as he may have chosen.    The child would have had no legal right to have compelled her being made the beneficiary.    An expressed intention of doing a thing cannot be the basis of a legal right.    We conclude, therefore, the $9,000 in question must be paid to the insured's estate, and it will be for those interested in that estate to carry out the wishes of the insured or not as they see fit, or are able. A formal ·decision may be drawn in accordance with these views.

In view of the peculiar circumstances of this case we are of the opinion that costs should not be awarded to any party and that the guardians *ad litem* should apply to the Special Term of this court for an allowance for their services.